WAYNE MUTUAL INSURANCE COMPANY, Appellee,

v.

MILLS et al., Appellees; Progressive Preferred Insurance Company, Appellant.

[Cite as *Wayne Mut. Ins. Co. v. Mills* (1996), 118 Ohio App.3d 146.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 95CA0091.

Decided July 31, 1996.

*Jerry Packard,* for Wayne Mutual Insurance Company.

*Charles Kennedy,* for appellees.

*Lawrence E. Chapanar,* for appellees Estate of Sean T. Wright, Norma C. Hammons, and Keith O. Hammons.

*Stephen P. Griffin,* for appellee Randy Hicks.

*William R. Joherl,* for appellee Thomas N. Thorn.

*Kenneth R. Beddow,* for appellee Brian Patterson.

*Eugene G. Gillis* and *Daniel D. Domozick,* for appellant Progressive Preferred Insurance Company.

---

BAIRD, Judge.

Appellant, Progressive Preferred Insurance Company, presents this appeal from the decision rendered in the Wayne County Court of Common Pleas. The trial court determined that appellant was not entitled to deny insurance coverage to appellees Sally J. Mills, Jason Hewitt, Thomas Thorn, Randy Hicks, and the estate of Sean Wright. We reverse.

The case stems from an automobile accident that occurred on October 17, 1994. The automobile, a 1986 Chevrolet Cavalier owned by Sally J. Mills, was being driven on a rural road in Wayne County by Mills's son, Jason Hewitt. In addition to Hewitt, the occupants of the vehicle were Thorn, Hicks, and Wright. Hewitt lost control of the vehicle and crashed; as a result, he, Thorn, and Hicks sustained injuries, and Wright was killed.

Hewitt lived with Mills and her husband in Wayne County. He owned his own automobile, a 1976 Ford Mustang. Mills had specifically arranged with her own automobile insurer, Wayne Mutual Insurance Company, to have Hewitt excluded as a driver from her policy in order to lower her premiums. Wayne Mutual and Mills signed an endorsement to that effect, and Hewitt was specifically excluded as an insured driver of Mills's automobile.[1]

Hewitt purchased his own insurance for the Mustang from appellant. That policy contained provisions for both liability coverage and uninsured/underinsured motorist coverage. After being impleaded as a third-party defendant in this litigation, appellant filed a motion seeking a declaratory judgment. Specifically, appellant requested that the trial court declare that "Progressive, pursuant to its policy, does not owe a defense or coverage to Sally J. Mills and Jason M. Hewitt" as a result of the accident. The other parties were joined or intervened.

---

1. A lawsuit involving this insurance policy was also filed. We determined the outcome of that litigation in *Wayne Mut. Ins. Co. v. Mills* (July 17, 1996), Wayne App. No. 95CA0083, unreported, 1996 WL 397127.

Various responses to appellant's motion were filed. On October 31, 1995, the trial court issued a journal entry denying appellant the requested relief.[2] Appellant then appealed to this court, and presents two assignments of error. The first of these concerns whether appellant is obligated to provide *bodily injury liability* coverage ("liability"); the second pertains to whether appellant is required to provide *uninsured/underinsured motorist* coverage ("UM/UIM").

## I

"The trial court erred by ignoring the evidence and the clear provisions of the policy in declaring bodily injury liability coverage under the policy."

At the outset, we note that the trial court did not explicitly "declare" that any coverage existed for any party. Rather, the trial court simply stated that appellant's arguments in support of its request for a fading of no coverage were without merit. Nonetheless, we will consider whether this finding was proper.

According to the policy issued by appellant to Hewitt, appellant agreed to "pay damages, **other than punitive or exemplary damages,** for which an **insured person** is legally liable because of **bodily injury** or **property damage** arising out of an **accident.**"[3]

Appellant contends that Hewitt was not an "insured person" at the time of the accident and, consequently, that no coverage should be provided. The policy defines "insured person" as "**you** or a **relative** with respect to an **accident** involving **your insured car** [or] a **non-owned car.**"[4]

---

**2.** The trial court characterized its decision as a ruling on a motion for summary judgment, and specifically denied that relief. Since the record indicates that appellant never filed a motion for summary judgment, but instead filed only a motion seeking a declaratory judgment, we will presume that the trial court addressed the declaratory judgment request, and proceed to consider the merits on that basis. We note further that neither party has objected to the trial court's characterization of the pleadings and its ruling.

**3.** Various terms in the policy were printed in bold type, as indicated.

**4.** The policy contains two separate definitions of an "insured person," each of which is expressly made applicable only to a certain section of the policy.

Part 1 of the policy, the liability section, under the heading "Additional Definitions Used in This Part Only," defines insured persons as "(1) **you** or a **relative** with respect to an **accident** involving **your insured car**, a **non-owned car**, or a **utility trailer** while being towed by **your insured car**[;] (2) any person driving **your insured car** with your permission and within the scope of such permission[.]"

Part IV (the UM/UIM coverage section) states that "[t]he 'Definitions' Section of your policy applies to this Part IV, except the definitions of 'Insured Person' and 'Accident,' and under Part IV * * * 'Insured Person' means **(a) you** or any **relative; (b) any person while occupying your insured car.**"

### A. "Insured Car"

Appellant contends that Hewitt was not driving his "insured car" at the time of the accident. According to the policy, Hewitt's "insured car" was defined as "any **car** described on the Declarations Page [*i.e.,* Hewitt's Mustang] or any **replacement car** [.]" A "replacement car" was "a **car** * * * that you [Hewitt] own and which has taken the place of the [Mustang] due to * * * mechanical breakdown or deterioration of the [Mustang], rendering it permanently inoperable."

The trial court found that Hewitt was driving his mother's Cavalier as a "replacement car" because the Mustang was "permanently inoperable." The trial court concluded that, since the term "permanently inoperable" was ambiguous, it was to be strictly construed against appellant and, therefore, in favor of coverage.

We find this decision to be erroneous. First, the deposition of Hewitt's mother indicates that, although Hewitt had indicated that the Mustang had mechanical difficulties, the Mustang was driven several months after the accident for nearly two miles down the road for storage in a neighbor's barn. Moreover, there is nothing to indicate that, even if the Mustang was later rendered permanently inoperable, Hewitt knew that to be the case on the date of the accident. In fact, Mills indicated that Hewitt did not believe that the car was permanently disabled, and that she and her husband spent several thousand dollars attempting to "fix up" the Mustang to "make it nice" for Hewitt.

Second, the record, especially the deposition of Mills, is quite specific regarding ownership of the vehicles. Hewitt at all times was the registered owner of the Mustang, and owned no other car. Mills was at all times the sole registered owner of the Cavalier. Hewitt never owned the Cavalier; therefore, regardless of whether the Mustang was or was not "permanently inoperable," since the Cavalier was not owned by Hewitt and was not taking the place of the Mustang, as required by the clear terms of the policy, it could not be a "replacement car."

Moreover, the policy also stated that "if **you** want coverage to apply to a **replacement car,** you must notify [appellant] within 30 days of its acquisition[.]" The record does not indicate that any such notification was ever provided. Hewitt was not driving either his insured Mustang or a replacement car as required by the policy.

### B. "Non-Owned" Car

The policy provided that, if Hewitt was driving either his insured car or a "non-owned" car, liability coverage would be provided. A "non-owned car" as defined in the policy was "any **car,** other than **your insured car,** which is not owned by, registered to, or furnished lot regular or frequent use by **you,** a

nonresident spouse, or a resident of the same household as **you** while in the custody of or being operated by **you** or a **relative.**"

The trial court did not consider the "non-owned car" argument in the context of liability coverage. Rather, the trial court stated that "Progressive denies any liability under the *uninsured/underinsured* portion of the Policy * * * based on the definition of a non-owned car." (Emphasis added.) However, it is clear from the language of the policy that it is *liability* coverage which is invoked if Hewitt is driving a non-owned car. UM/UIM coverage is discussed in Part IV of the policy, while liability insurance is confined to Part I; only the section discussing liability coverage makes any mention of a "non-owned car."[5]

The trial court determined that, pursuant to the Supreme Court of Ohio's decision in *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, syllabus, insurance contracts which exclude UM/UIM coverage for "household vehicles," *i.e.*, vehicles owned by the insured or a member of his household, are void as against public policy and R.C. 3937.18(A). As stated in *Martin v. Midwestern Group Ins.* (1994), 70 Ohio St.3d 478, 481, 639 N.E.2d 438, 441:

"R.C. 3937.18 is the yardstick by which all exclusions of uninsured motorist coverage must be measured. Under *Alexander,* the statute mandates coverage if (1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law."

This court has repeatedly adopted the *Alexander* standard in considering such clauses in various insurance contracts. However, the clear holding of both *Alexander* and *Martin* is that UM/UIM coverage is not to be denied under such clauses. Neither decision addresses whether *bodily injury liability* coverage is subject to such a mandate. Moreover, the statute construed in both decisions, R.C. 3937.18, specifically addresses UM/UIM insurance, not bodily injury liability insurance. No party cites any authority for the proposition that the *Alexander* doctrine should be extended beyond UM/UIM coverage to encompass other forms of casualty insurance.

Appellees contend that the term "permanently inoperable" and "regular use" are ambiguous. They argue that since the terms are vague, they should be construed in favor of coverage, as the trial court determined. As a general rule, this is correct. Language in a contract of insurance reasonably susceptible of

---

5. As discussed below, UM/UIM coverage was dependent upon whether Hewitt was driving his "insured car" or a "replacement car," whereas liability coverage was premised upon whether Hewitt was driving his "insured car" (the Mustang or a "replacement car") or a "non-owned car."

more than one meaning will be construed liberally in favor of the insured and strictly against the insurer. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

Nevertheless, this rule cannot be employed to create ambiguity where there is none. See *Dunfee v. Midwestern Indemn. Co.* (1990), 70 Ohio App.3d 301, 306, 590 N.E.2d 1365, 1368. After a thorough consideration of the policy at issue, we find nothing ambiguous or vague about these terms or the definitions discussed above. The rule of liberal interpretation in favor of the insured does not require a court to adopt a forced or strained construction of an insurance contract. *W. Res. Mut. Cas. Co. v. Eberhart* (1991), 81 Ohio App.3d 93, 99, 610 N.E.2d 481, 485–486. Where an insurance policy is clear and unambiguous on its face, the words of the policy must be given their plain and ordinary meaning. *Johnston v. Akron Ctr. for Reproductive Health, Inc.* (1990), 68 Ohio App.3d 655, 657, 589 N.E.2d 432, 433; *Michigan Property & Cas. Guar. Assn. v. Booth* (Sept. 2, 1992), Wayne App. No. 2722, unreported, 1992 WL 217840, at 6.

It is clear that the policy applies the "non-owned car" criteria (the "household vehicle" exclusion) to the question of liability coverage. That requirement states that Hewitt is insured while driving a car other than the Mustang only if that other car is not owned, registered to, or furnished for the regular use of Hewitt or someone residing in his household at the time Hewitt was using the car. Since the Cavalier was owned by, registered to, and used regularly by Hewitt's mother, with whom Hewitt lived, the Cavalier was not a "non-owned car" within the meaning of the policy.[6] Therefore, appellant was not required to provide bodily injury liability coverage to Hewitt when he was driving the Cavalier.

Accordingly, appellant's first assignment of error is sustained.

## II

"The trial court erred by ignoring the evidence and the clear provisions of the policy in declaring uninsured/underinsured motorists coverage under the policy."

Appellant asserts that the trial court committed error by finding that UM/UIM coverage should be provided to Hewitt and his passengers. As noted above, the trial court's journal entry did not specifically declare that coverage existed; it merely stated that appellant's arguments in support of its denial of coverage were meritless.

---

6. Appellees contend that there is no evidence that Hewitt frequently used the Cavalier; this statement, even if true, is irrelevant. If the Cavalier was furnished for regular use to Hewitt or a member of his household, it was, under the policy definition, not a "non-owned car."

The trial court determined that, pursuant to *Alexander* and *Martin, supra,* appellant was prohibited from denying UM/UIM coverage on the basis of its "household exclusion" found in the "non-owned car" provision. However, the policy itself, as we have noted, directly applies the "non-owned car" concept only to liability insurance. Moreover, as discussed below, even if we were to find that the "non-owned car" provision was improperly invoked with respect to UM/UIM coverage, it is apparent that UM/UIM coverage is available only to insured *persons,* regardless of whether an exclusion pertaining to *vehicles* is valid or unenforceable.

Part IV of the policy states that appellant will pay damages "for **bodily injury** to an **insured person** which that person is legally entitled to recover from the owner or operator of an **uninsured** * * * or an **underinsured motor vehicle**[.] * * * The **bodily injury** must be caused by **accident**[.]"

"Accident" is defined in the policy as "an unexpected and unintended event that causes **bodily injury or property damage** and arises out of the ownership, maintenance, or use of **your insured car** or a **non-owned car.**" A "non-owned car" is, as discussed above, defined subject to the "household exclusion," as "any **car,** other than **your insured car,** which is not owned by, registered to, or furnished for regular or frequent use by **you,** a nonresident spouse, or a resident of the same household as **you** while in the custody of or being operated by **you** or a **relative.**"

Appellees argue that, because (1) the UM/UIM coverage is contingent on the injury arising from an accident, (2) an "accident" is contingent on the use of an insured car or a non-owned car, and (3) a "non-owned car" is defined to exclude vehicles owned by other household members, appellant indirectly employs a "household" exclusion to deny UM/UIM coverage. Such exclusions have been held contrary to public policy and R.C. 3937.18 when used for such a purpose. See *Alexander* and *Martin, supra.*

However, appellees' arguments ignore the initial language of the policy, which states that appellant will pay UM/UIM benefits "for bodily injury *to an insured person*[.]" (Emphasis added.) Although the UM/UIM coverage section or the policy might be interpreted as containing a household exclusion based upon the definitions of "accident" and "non-owned car," that language was not the basis for appellant's denial of UM/UIM coverage.

The policy states that bodily injury to an insured person will be covered if it is caused by an accident. Thus, even if we adopt appellees' contention that the policy illegally attempts to limit the class of automobiles in which compensable bodily injury might occur, the injury must still occur to an insured person in order for coverage to be mandated.

Appellant denied coverage because appellees were not "insured persons" in the first place, and, therefore, were ineligible for coverage. Part IV.1 (the UM/UIM section) of the policy defines "insured person" as "(a) **you** [Hewitt] or any **relative;** (b) any person while occupying **your insured car.**" The policy further defines "your insured car" as Hewitt's Mustang or a "replacement car." We determined, in our discussion of appellant's first assignment of error, that the Cavalier, since it was owned by Hewitt's mother, was neither Hewitt's insured car nor a replacement car.

Although it is true that *Alexander* and *Martin* prohibit denial of UM/UIM coverage on the basis of the "household" or "other owned vehicle" exclusions, neither of those cases prohibits the parties to an insurance contract from defining who is to be an "insured person" under the terms of the policy. Indeed, the *Martin* court specifically stated that "the statute mandates coverage if (1) *the claimant is [a named] insured* under a policy[.]" (Emphasis added.) *Martin v. Midwestern Group Ins.,* 70 Ohio St.3d at 481, 639 N.E.2d at 441.

"The purpose of the uninsured motorist statute is not to provide coverage for an uninsured vehicle but rather to afford *the insured* additional protection in the event of an accident." (Emphasis added.) *Watson v. Grange Mut. Cas. Co.* (1988), 40 Ohio St.3d 195, 197, 532 N.E.2d 758, 760.

If the claimant is not an insured, then he may be denied coverage. See *Wright v. Grange Mut. Cas. Co.* (Jun. 27, 1995), Coshocton App. No. 94–CA–18, unreported, 1995 WL 495441.

Ohio courts have consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts. *Universal Underwriters Ins. Co. v. Shuff* (1981), 67 Ohio St.2d 172, 173, 21 O.O.3d 108, 108–109, 423 N.E.2d 417, 417–418; *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1101–1102, certiorari denied (1993), 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152. An insurance contract "must be given a fair and reasonable interpretation to cover the risks anticipated by the parties." *Snyder v. Motorists Mut. Ins. Co.* (1965), 2 Ohio App.2d 19, 21, 31 O.O.2d 65, 66, 206 N.E.2d 227, 228; *W. Res. Mut. Cas. Co. v. Eberhart,* 81 Ohio App.3d at 98, 610 N.E.2d at 485.

In this case, the parties to the insurance contract agreed that only persons who were riding in Hewitt's insured car (the Mustang or a replacement) were to be "insured persons" eligible for coverage. Since Hewitt was driving neither his insured car nor a "replacement car," his passengers were not insured persons. Appellees argue that appellant is, in effect, contravening the purposes of R.C. 3937.18 and attempting to circumvent the prohibitions of *Alexander* by employing

a restrictive definition of what constitutes an "insured person." However, this argument is not persuasive.

Appellees, unlike the claimants in *Alexander* and *Martin*, are not seeking payment of coverage pursuant to policies of their own. Instead, they essentially contend that, because they were riding in an automobile driven by a person who possessed UM/UIM coverage, they are entitled to relief under the UM/UIM provision of that driver's policy, even though appellees are not named insureds thereunder. We cannot agree that the decisions in *Alexander* and *Martin* contemplated such a bizarre application.

Moreover, a fair and reasonable construction of the policy yields the conclusion that appellant only agreed to provide coverage to Hewitt or any potential passengers so long as Hewitt was driving a specific automobile. Such an agreement does not attempt to contravene the public policy behind R.C. 3937.18.

The trial court applied the *Alexander* doctrine to overrule appellant's denial of UM/UIM coverage; however, that doctrine is inapplicable here, since denial of coverage was not made on that basis. Accordingly, appellant's second assignment of error is sustained.

The judgment of the trial court is reversed, and the matter is hereby remanded for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

REECE, J., concurs.

QUILLIN, P.J., concurs in judgment only.