BOGAN et al.

v.

JOHNSON et al.■

2003-Ohio-1981.]

Court of Common Pleas of Ohio,
Clinton County.

No. CVC20010126.

Decided March 10, 2003.

Henry D. Acciani and John K. Benintendi, for plaintiffs.

David Davidson, for defendant Dustin W. Johnson.

Eric L. Dauber, for defendant Nationwide Mutual Fire Insurance Company.

John Farnan, for defendant Royal Insurance Company of America.

Colleen Blanford, for defendant Cincinnati Insurance Companies.

Theresa H. Vella, for defendant Great American Insurance Company.

JOHN O. CROUSE, Judge.

## SUMMARY JUDGMENT

{¶ 1} The above parties have filed motions for summary judgment addressing numerous issues, all of which point to the ultimate question of whether plaintiffs

are entitled to UIM coverage under insurance policies issued by defendants. Pursuant to Civ.R. 56, summary judgment is appropriate if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The parties concede and the court finds that there are no issues as to any material fact; thus, this court must determine the various coverage questions as a matter of law.

## FACTS

{¶ 2}  On March 9, 1999, Michael S. Bogan, while operating his automobile in Warren County, Ohio, suffered injuries resulting from the negligent operation of a motor vehicle by defendant Dustin W. Johnson. Michael Bogan worked for the American Cancer Society, Ohio Division, Inc. His title was "Regional Director" with responsibilities that would fall within those of an executive officer or employee of that corporation. At the time of the accident he was operating his own personal vehicle not in the scope of his employment with the corporation.

{¶ 3}  Plaintiffs settled with Dustin W. Johnson for his insurance policy limits. Michael Bogan had an automobile policy with Nationwide Mutual Fire Insurance Company, which provided UIM coverage. There is no issue that plaintiffs are entitled to the benefits of such coverage.

{¶ 4}  American Cancer Society is an insured under a commercial automobile policy and a commercial general liability policy with defendant Royal Insurance Company of America.[1]

{¶ 5}  Plaintiff Lora Bogan, spouse of Michael Bogan, was employed at Miami Valley Hospital, which was insured by Cincinnati Insurance Companies.

{¶ 6}  Great American Insurance Company issued an umbrella liability policy to American Cancer Society which includes their incorporated Ohio Division.

I:  ARE PLAINTIFFS ENTITLED TO UIM COVERAGE UNDER THE COMMERCIAL AUTOMOBILE POLICY (PTT 456047) ISSUED BY ROYAL INSURANCE COMPANY OF AMERICA TO THE AMERICAN CANCER SOCIETY.

1. Is Michael Bogan an "insured" under the above policy pursuant to *Scott–Pontzer*?

{¶ 7}  The policy definition of "insured" is identical to the *Scott–Pontzer* policy. Royal Insurance Company claims that the "drive other car" coverage resolves any ambiguity. There are cases in numerous jurisdictions that hold that

---

1.  American Cancer Society, a corporation, has an Ohio division (American Cancer Society, Ohio Division, Inc.), which, along with their other incorporated divisions in the remaining forty-nine states, are named insureds.

this coverage resolves the "ambiguity," and there are numerous jurisdictions that hold that it does not resolve the "ambiguity." The Twelfth District Court of Appeals in *Reichardt v. Natl. Sur. Corp.*, Nos. CA2002–02–017 and CA2002–02–018, 2002-Ohio-5143, 2002 WL 31175537, has ruled that said endorsement does not resolve any ambiguity; therefore, application of the *Scott–Pontzer* rule is appropriate. This court is obligated to follow this precedent.

2. Did the March 17, 1998 "rejection" by American Cancer Society negate UIM coverage under the Royal Commercial Automobile Policy?

{¶ 8} *Linko v. Indemn. Ins. Co. of Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, sets forth three requirements of an offer of UIM coverage prerequisite to a valid rejection by the insured. These three requirements are a brief description of the coverage, the premium for that coverage, and an express statement of UIM coverage limits. It is conceded and there is no question that the *written* offer/rejection document dated March 17, 1998, fails to comply with *Linko.*

{¶ 9} Thus, the determinative issue is whether *Linko* applies to UIM rejection forms executed after the effective date of House Bill 261 modifications (September 3, 1997). The pertinent portion of said modification provides:

"A named insured's * * * rejection of both coverages as offered under Division (A) of this section * * * shall be in writing and shall be signed by the named insured or applicant. *A named insured's * * * signed rejection * * * shall create a presumption of an offer of coverages consistent with Division (A) of this section,* and shall be binding on all other named insureds, or applicants." (Emphasis added.)

{¶ 10} On December 24, 2002, the Supreme Court issued a skeleton opinion in *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, in which the United States District Court had certified the following questions of law:

"(1) Are the requirements of *Linko* * * * relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after enactment of * * * HB 261. * * *

"(2) If the *Linko* requirements are applicable, does, under HB 261, a signed rejection act as an effective declination of UM/UIM coverage *where there is no other evidence, oral or documentary* of an offer of coverage?" (Emphasis added.)

{¶ 11} The Supreme Court without explanation stated:

"We answer certified question No. 1 in the affirmative and certified question No. 2 in the negative."

{¶ 12} Do the *Linko* "requirements" referred to *Kemper* limit consideration to the four corners of the rejection form to determine whether there was an effective offer and rejection of UIM coverage? Conversely, can this court examine parole or extrinsic evidence outside the four corners of the offer/rejection form to determine whether there was an effective offer? The language in HB 261, "[a] signed rejection * * * shall create a presumption of an offer," reasonably implies that extrinsic evidence can be offered on that issue. To say that a signed rejection document creates a presumption but that that presumption can be evaluated only by examining the signed rejection document is ludicrous. This analysis is indirectly supported by the Supreme Court's answer to certified question No. 2 in *Kemper*, which sets forth as part of the question "where there is no other evidence, oral or documentary." This court concludes that it is appropriate to examine parol or extrinsic evidence.

{¶ 13} Exhibit B attached to plaintiff Royal Insurance Company's motion for summary judgment contains the affidavit of Lee B. Barton, who was the officer responsible for purchasing the insurance coverage from Royal Insurance Company on behalf of the American Cancer Society. He states that he was fully apprised of what UIM insurance was available for the state of Ohio Division, the requirements under the laws of Ohio with regard to the purchasing of that coverage and all applicable premiums. Under HB 261 and *Kemper*, this unrebutted affidavit offering evidence extrinsic to the offer/rejection form demonstrates that both the insurer and the insured complied with the three requirements of *Linko*.

3. Should the Royal Commercial Auto Policy (and the Royal Commercial General Liability Policy) be determined by Ohio or Georgia law?

{¶ 14} *Ohayon v. Safeco Ins. Co. of Illinois* (2001), 91 Ohio St.3d 474, 747 N.E.2d 206, provides that a declaratory judgment action for UM/UIM coverage is a matter of contract law. The rights and duties of parties to an insurance contract shall be determined by the laws of the state determined by applying the rules in Sections 187 and 188 of the Restatement of the Law, Conflicts. The court must determine which state has the most significant relationship to the parties. The factors to be determined are:

Place of contracting

Place of negotiation

Place of performance

Location of the subject matter

Domicile and place of incorporation

Place of business of the parties.

{¶ 15} In this case the "contact" with Ohio is:

that Michael Bogan was an employee of the Ohio division of the insured,

Michael Bogan lived in Ohio,

the policy covers the Ohio division of the insured (along with their divisions in all other 49 states),

the accident occurred in Ohio.

{¶ 16}   The "contact" with Georgia is:

Royal issued its policies to the American Cancer Society in Georgia;

American Cancer Society had its principal place of business in Georgia;

It is reasonable to infer that negotiations for the policy took place in Georgia and the place of performance was Georgia.

{¶ 17}   *Ohayon* holds that the law of the state where the automobile policy was executed and delivered rather than the law of the state where the accident occurred governs the issues of UIM benefits.[2]

{¶ 18}   Applying *Ohayon* and the Restatement of the Law, Conflicts, this court concludes that Georgia "bears the most significant relationship to the contract."   As set forth above, the place of contracting was Georgia, the place of negotiation was Georgia, the place of performance was Georgia, location of the subject matter of the contract was Georgia (with coverage to their incorporated subsidiaries in 50 states), and the place of business of the parties was Georgia.

{¶ 19}   See, also, *Carr v. Isaacs*, 12th Dist. No. CA2001–08–191, 2002-Ohio-1734, 2002 WL 553715.   This case is very similar to the case under decision.   The policies were issued from the company's North Carolina office.   The policies were sold and delivered by a North Carolina insurance agency to Water Ink Technologies, Inc., a North Carolina corporation.   That court stated that it can reasonably be inferred from these facts that the negotiation and performance of the contract occurred in North Carolina.   In *Carr*, Water Ink Technologies, Inc., provided the plaintiff an automobile that was garaged in the state in which the tort occurred. It should be noted that this case involved much less contact with the state where the tort occurred.   The Butler County Court of Appeals in *Carr* found that North Carolina had the most significant relationship with the parties in the transactions.

{¶ 20}   This court finds that Georgia had the most significant relationship with the parties in the transaction involving the insurance coverage.   Following *Ohayon, Carr*, and the Restatement of the Law, Conflicts, this court finds that the insurance contracts should be interpreted under Georgia law and that *Scott–Pontzer* is not applicable under any circumstances.

---

2.   *Ohayon* resolved coverage issues based on contract law only, independent of the residence of the insured and the location of the tortious conduct.

II: ARE PLAINTIFFS ENTITLED TO UIM COVERAGE UNDER THE COMMERCIAL GENERAL LIABILITY POLICY (PTV 456046) ISSUED BY ROYAL INSURANCE COMPANY OF AMERICA TO THE AMERICAN CANCER SOCIETY.

1. Is the Royal Insurance Company of America Commercial General Liability Policy an Automobile or Motor Vehicle Policy?

{¶ 21} R.C. 3937.18 required insurers, offering automobile insurance in Ohio, to make UIM coverage available to policy holders. This mandate is applicable only to "automobile liability or motor vehicle liability policy of insurance." R.C. 3937.18(L) requires that the policy both serve as "proof of financial responsibility" and insure motor vehicles "specifically identified in the policy" in order to qualify as an automobile or motor vehicle policy.

{¶ 22} Royal Insurance policy PTV 456046 sets forth the following exclusions from coverage:

"2. Exclusions.

"This insurance does not apply to:

"* * *

"(G) * * * auto * * * 'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any * * * 'auto' * * * owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'

"This exclusion does not apply to:

"* * *

"3. Parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured."

{¶ 23} Bogan relies on *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, 709 N.E.2d 1161, and a Butler County Common Pleas decision styled *Hurley v. Cincinnati Ins. Co.*, No. CV98–09–1519, as a basis for implying UIM automobile coverage into the Royal Commercial general liability policy. The policy in *Selander* specifically provided liability coverage for non-owned or hired autos. The Royal Commercial General Liability policy does not provide such coverage. In addition, the Supreme Court in *Davidson v. Motorists Mut. Ins. Co.* (2001), 91 Ohio St.3d 262, 744 N.E.2d 713, held that incidental motor vehicle liability coverage does not transform a homeowner's insurance policy into an automobile liability policy. The Supreme Court rejected the extension of *Selander* regarding insurance policies containing only incidental motor vehicle liability coverage. The court stated that *Selander* involved a general business liability policy that specifically provided liability coverage for injuries arising out of the use of automobiles. The court stated:

"In *Selander*, we were construing a general business liability policy that expressly provided insurance against liability arising out of the use of automobiles that were used and operated on public roads. * * * In contrast, the policy at issue in this case is a homeowner's policy that does not include coverage for liability arising out of the use of motor vehicles generally. Instead, the homeowner's policy provides incidental coverage to a narrow class of motorized vehicles that are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property."

{¶ 24} *Hillyer v. State Farm Fire & Cas. Co.*, 97 Ohio St.3d 411, 2002-Ohio-6662, 780 N.E.2d 262, is the most recent published opinion[3] regarding the "transform[ation]" of a policy into a motor vehicle policy. This case is a consolidation of several cases reflecting the inconsistency between various court of appeals districts. Like *Davidson*, these cases involve the interpretation of homeowner policies. However, the reasoning and holding of *Davidson* and *Hillyer* emphasizes that the "title (of the policy) * * * is not determinative, because it is the *type* of coverage provided, not the *label* affixed by the insurer, that determines the type of policy." (Emphasis added.) Like *Davidson* and *Hillyer*, this case expressly excludes motor vehicles with the minor exception of "parking" an auto on or on the ways next to the premises insured. This coverage is remote and incidental. *Hillyer* reiterates that this type of policy was not intended to satisfy the statutory requirement of financial responsibility against liability[4] arising from the ownership or operation of vehicles used for transportation on the highway.

{¶ 25} *Hillyer* offers this reasoning:

"Common sense alone dictates that neither the insurer nor the insured bargained for or contemplated that such * * * insurance would cover personal injuries arising out of an automobile accident that occurred on a highway away from the insured's premises."

{¶ 26} Bogan relies on *Hurley v. Cincinnati Ins. Co.*, a common pleas decision from Butler County (case No. CV98–09–1519), decided December 17, 1999. The commercial general liability policy in *Hurley* is almost identical to the Royal Insurance Company Commercial general liability policy. The common pleas court in that case relied on *Selander* and held that where motor vehicle liability coverage is provided, even in a limited form, UIM coverage must also be provided. This extension of *Selander* was clarified in the *Davidson* and *Hillyer* cases decided by the Supreme Court in 2001 and 2002, after the *Hurley* decision

---

3. As of the date of this decision.

4. R.C. 4509.01.

had been rendered. This court finds that *Davidson* and *Hillyer* overrule the extended concept of *Selander* set forth in the *Hurley* case. This court concludes that the Royal Insurance Company commercial general liability policy is not an automobile or motor vehicle policy.

2. Is Bogan an "insured person" in the Royal Insurance Company Commercial General Liability policy?

{¶ 27} *Scott–Pontzer* is predicated on the basis that the definition of "insured" is ambiguous. Under the commercial liability policy, American Cancer Society as a corporation is listed as the insured. Section II of said policy refines and details the definition of "insured." Section II(D) it sets forth:

"Your 'executive officers' and directors are insureds, *but only with respect to their duties as your officers or directors*." [5] (Emphasis added.)

{¶ 28} Section II(2) sets forth as follows: Each of the following is also an insured:

"a. Your 'employees' * * * but only for acts within the *scope of their employment by you or while performing duties related to the conduct of your business*." (Emphasis added.)

{¶ 29} The policy language clearly shows, without any ambiguity, that the insurance provisions provide only for executive officers and directors with respect to their duties and/or employees only within the scope of their employment. Bogan clearly falls outside this definition of insured as set forth in the policy. This narrowed definition of "insured" is valid and enforceable and does not violate R.C. 3937.18 or the mandate of *Scott–Pontzer*. See *Holliman v. Allstate Ins. Co.* (1999), 86 Ohio St.3d 414, 715 N.E.2d 532, and *Wayne Mut. Ins. Co. v. Mills* (1996), 118 Ohio App.3d 146, 692 N.E.2d 213. Thus, Bogan and his family are not eligible to recover UIM benefits under the Royal commercial general liability policy because they are not insureds.

3. *Scott–Pontzer* is not applicable to the Royal Insurance Company Commercial Liability policy because Georgia law applies.

{¶ 30} This court makes that determination based on the same reasoning set forth in Section I(3) above.

III: ARE PLAINTIFFS ENTITLED TO UIM COVERAGE UNDER THE COMMERCIAL AUTOMOBILE POLICY (CPP0636960) ISSUED BY CINCINNATI INSURANCE COMPANY TO MIAMI VALLEY HOSPITAL.

{¶ 31} At the time of the March 1, 1999 accident, Lora Bogan, wife of Michael Bogan, was employed by Miami Valley Hospital. Cincinnati Insurance

---

5. Section II(D) defines an "incorporated entity" by setting forth "an organization other than a partnership, joint venture or limited liability company."

Company (hereafter "CIC") is an insurer of Miami Valley Hospital under the above-numbered policy. The Bogans claim they are entitled to UIM benefits under this policy.

{¶ 32} Bogan correctly argues that the policy language contained in the UIM coverage section of the policy defines an "insured" in the identical language contained in *Scott–Pontzer* policy. Bogan further argues that, notwithstanding other language in the policy, Lora Bogan, an employee of Miami Valley Hospital, is an "insured" and therefore Michael Bogan and family members likewise are insured under *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142. Thus, once having the *Scott–Pontzer* taint (ambiguity) other policy provisions can be ignored resulting in UIM coverage. In further support of this position, Bogan relies on *Kasson v. Goodman*, 6th Dist. No. L–01–1432, 2002-Ohio-3022, 2002 WL 1800997. Kasson, if accepted by this court, is "on all fours." It has the identical provisions as the policy in this case.[6]

{¶ 33} The basis of *Scott–Pontzer* is ambiguity. If an insurance company poorly drafts an insurance contract giving rise to multiple interpretations, the interpretation that most favors the insured should be applied. *Scott–Pontzer* also stands for the proposition that where only one interpretation can be given to the words of the contract, then those words shall be applied as written. In the CIC policy before this court, the named insured is Miami Valley Hospital. Unlike the ambiguity that corporations do not drive automobiles and "you" has no significant meaning regarding UIM coverage, it is clear that a corporate entity vis-à-vis, Miami Valley Hospital, can own and insure its own automobiles. The business auto declarations sets forth:

" 'COVERED AUTO'

"(Entry of one or more of the symbols from the covered auto's section of the business auto coverage form shows which autos are covered autos.) It is designated symbol 2."

{¶ 34} Section I–Covered Autos provides in A(2):

"Owned 'autos' ONLY. Only those autos you own * * * this includes those 'autos' you acquire ownership of after the policy begins."

{¶ 35} Section II—LIABILITY COVERAGE states:

"1. WHO IS AN INSURED?

"The following are 'insureds:'

"A. You for any covered 'auto' * * *."

---

**6.** Curiously, the *Kasson* court totally ignored the clear language that the CIC policy covered only those "autos" for which a premium was charged.

{¶ 36}   The Ohio Uninsured Motorist Coverage—Bodily Injury section provides:

"For a *covered 'auto'* [emphasis added] this endorsement modifies insurance provided * * *."

{¶ 37}   This policy has no ambiguity whatsoever as to the fact that the policy covers automobiles owned by Miami Valley Hospital.   This language is not susceptible of different interpretations.   The vehicle involved in the accident was not owned by Miami Valley Hospital.

{¶ 38}   This court specifically rejects the reasoning in *Kasson* and adopts the holding in *Reedy v. Warner* (2001), Montgomery C.P. No. 2000CV5269, and *Daugherty v. Hamilton,* Ottawa C.P. No. 00CVC026, both of which have concluded that where an insurance policy contains language limiting under insurance motorist coverage to "owned autos," the policy does not cover persons who are injured in non-owned autos even if the policy contains the ambiguous *Scott–Pontzer* definition of "you."

IV: ARE PLAINTIFFS ENTITLED TO UIM COVERAGE UNDER THE UMBRELLA POLICY ISSUED BY GREAT AMERICAN INSURANCE COMPANY TO THE AMERICAN CANCER SOCIETY.

1. Under *Ohayon* and *Carr* (cited above) *Scott–Pontzer* is inapplicable to the Great American Insurance Company Umbrella Policy because Georgia law applies.

{¶ 39}   There is no issue of fact that the policy was placed, issued, and delivered by a broker in Atlanta, Georgia, and purchased by American Cancer Society, Inc., at its headquarters in Atlanta, Georgia.   By implication this court concludes that all negotiations regarding the place of performance is in the state of Georgia.

{¶ 40}   Thus, Bogan's *Scott–Pontzer* claims in regard to this umbrella policy are denied.

2.   Since this court has determined that no coverage is afforded to Bogan under the underlying Royal Insurance Company commercial auto policy and/or commercial liability policy, the Great American Insurance Company umbrella policy provides no coverage to Bogan.

3.   Even if *Scott–Pontzer* was the applicable law to this insurance contract Bogan does not come within the definition of "insured" and cannot be implied as a matter of law that he is an insured.

{¶ 41}   Section V of the policy provides:

"1.   The named insured meaning:

"A.   any person or organization listed in item 1 of the declarations.

"* * *

"6. Any of your partners, executive officers, directors or employees *but only while acting within the scope of their duties.*"  (Emphasis added.)

{¶ 42}   Thus without any ambiguity American Cancer Society, Inc. is named as an insured and officers, directors or employees of said corporation while acting within the scope of their duties.  Bogan was not acting within the scope of his duty as an executive officer or employee of American Cancer Society.

## CONCLUSION

{¶ 43}   The motions for summary judgment filed by plaintiffs and Nationwide Mutual Fire Insurance Company are overruled.  The motions for summary judgment of Royal Insurance Company, Cincinnati Insurance Companies, and Great American Insurance Company are granted.  Therefore, plaintiffs' claims for UIM insurance coverage against Royal Insurance Company, Cincinnati Insurance Companies, and Great American Insurance Company are denied.

{¶ 44}   Plaintiffs to pay costs.

{¶ 45}   SO ORDERED.

JOHN O. CROUSE, J., retired, of the Highland County Court of Common Pleas, sitting by assignment.