{¶ 30} Bryant, P.J., dissenting. I must respectfully dissent from the majority because I do not believe that majority's reliance onScott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116 in this particular matter is appropriate.
 {¶ 31} The Supreme Court's decision in Scott-Pontzer contains two distinct holdings regarding two distinct policies; the Liberty Fire policy and the Liberty Mutual policy. With respect to the Liberty Fire policy, the court considered whether Christopher was an insured under an express UM/UIM provision in a commercial auto policy. As is well known now, the Supreme Court found the language in the Liberty Fire policy to be ambiguous and construed the policy to include UM/UIM coverage for the corporation's employees. Id. at 664. This portion of the Scott-Pontzer
decision is not relevant to my dissent.
 {¶ 32} In the second part of Scott-Pontzer, the court turned to the issue of UM/UIM coverage under an excess/umbrella issued to Superior Diary by Liberty Mutual, and found that, unlike the express UM/UIM coverage provided by Liberty Fire, the Liberty Mutual policy failed to offer UM/UIM coverage as required by R.C. 3937.18. Consequently, theScott-Pontzer court found that UM/UIM coverage arose by operation of law in accordance with Duriak v. Globe Am. Cas. Co. (1986), 28 Ohio St.3d 70,72, 502 N.E.2d 620 and Gyori v. Johnston Coca-Cola Bottling Group
(1996), 76 Ohio St.3d 565, 568, 669 N.E.2d 824. Id. at 665. Thereafter, the court determined that Christopher Pontzer was an insured under the Liberty Mutual excess/umbrella policy, despite the fact that the policy defined an insured as "employees, but only for acts within the scope of their employment by you." The court arrived at this conclusion as follows:
Absent any showing that underinsured coverage was offered andrejected, such coverage is included in the policy. Therefore, we concludethat, as an employee of Superior Dairy, was also an insured underSuperior Dairy's umbrella/excess insurance policy and that said policyincludes underinsured motorist coverage, as such.
Id. Subsequently, the court held where UM/UIM coverage arose by operation of law, it would not apply any language restricting coverage to employees acting within the scope of their employment. Id. at 666. The court reasoned as follows:
Liberty Mutual's umbrella/excess insurance policy did restrict coverageto employees acting within the scope of their employment. However, wehave already found that Liberty Mutual had failed to offer underinsuredmotorist coverage through the umbrella policy issued to Superior Dairy.Thus, any language in the Liberty Mutual umbrella policy restrictinginsurance coverage was intended to apply solely to excess liabilitycoverage and not for purposes of underinsured motorist coverage. Id.
 {¶ 33} In Zirger v. Ferkel, Seneca App. No. 13-02-05, 2002-Ohio-2822 (relying on Lawler v. Fireman's Fund Ins. Co. (2001),163 F. Supp.2d 841), this court attempted to distinguish the holding inScott-Pontzer by pointing out that defining an insured as "your employees acting in the scope of their employment" did not constitute "restrictive language" and therefore, if the "scope of employment language" occurred in the definition of an insured, Scott-Pontzer did not preclude coverage. Id. at ¶ 55-59. Today the majority points out that the "restrictive language" or "scope of employment language" in theScott-Pontzer Liberty Mutual policy also occurred within the definition of "who is an insured."
 {¶ 34} The Scott-Pontzer holding, as now correctly interpreted by the majority, states that where the insurance company fails to proffer UM/UIM coverage, all employees of the named insured are insured thereunder, regardless of language in the policy that provides otherwise. Notably, the Scott-Pontzer court did not state that Christopher Pontzer was an insured because of some ambiguity in the policy, but rather because Liberty Mutual failed to offer UM/UIM coverage. In other words, the court awarded coverage to a person to whom Liberty mutual was not even required to offer UM/UIM coverage, because
they didn't offer him coverage. The result cannot be logically reconciled. As punishment for not offering UM/UIM, the Scott-Pontzer
holding takes away an employer's and an insurance company's ability to bargain. I dissent from the majority because I do not believe that this unanticipated consequence of Scott-Pontzer remains good law.
 {¶ 35} R.C. 3937.18 requires UM/UIM coverage if (1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law. State Farm Auto. Ins. Co. v. Alexander
(1992), 62 Ohio St.3d 397, 583 N.E.2d 309. Therefore, the first step in any insurance dispute is to determine whether or not the claimant is an insured under the relevant policy. Indeed, R.C. 3937.18(A)(1), mandates UM/UIM coverage "for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles * * *." If the claimant is not an insured, the inquiry ends.Scott-Pontzer, supra at 662.
 {¶ 36} In Holliman v. Allstate Ins. Co., 86 Ohio St.3d 414,1999-Ohio-116, 715 N.E.2d 532, released three months afterScott-Pontzer, the Ohio Supreme Court considered a case where a claimant argued that an umbrella policy's narrow definition of "insured persons" eliminated uninsured motorist coverage in contravention of the purpose of R.C. 3937.18 and Martin v. Midwestern Group Ins. Co. (1994),70 Ohio St.3d 478, 639 N.E.2d 438. Id. at 416-417, citing Wayne Mut.Ins. Co. v. Mills (1996), 118 Ohio App.3d 146, 154, 692 N.E.2d 213. There, the court held that "[n]othing in R.C. 3937.18 or Martin prohibits the parties to an insurance contract from defining who is an insured person under the policy. Holliman, supra at 417 (citing Wayne, supra at 154).
 {¶ 37} While the Holliman court and Scott-Pontzer court considered different issues with respect to UM/UIM coverage, the Holliman holding was anchored on the fact that the statutory requirements of R.C. 3937.18
are not triggered until there has been a determination that the claimant is an insured. Furthermore, Holliman reaffirms the right of parties to an insurance contract to define the class of insureds for any particular policy and acknowledges that the determination of "who is an insured" is the initial issue in any insurance coverage dispute. Had the court inScott-Pontzer looked to the definition of "who is an insured" under the Liberty Mutual Policy prior to imposing coverage as a matter of law, the results would have been very different. Christopher Pontzer was not injured in the course of his employment with Superior Dairy, and therefore, he was not an insured according to the terms of the Liberty Mutual umbrella/excess liability policy. The inquiry would have ended there. I find that the holding in Holliman is controlling in the matter at bar.
 {¶ 38} This concept is not novel. Recently, in Rall v. Johnson,
Wyandot App. No. 16-02-13, 2003-Ohio-1373, this court explained that determining who is insured under a policy is priority number one "because R.C. 3937.18 only requires that UM coverage be offered to personsinsured under the liability policy of insurance * * *." Id. at ¶ 12 (emphasis in original). We further stated in Rall:
Where a party neither expressly nor impliedly qualifies as an insuredas defined within an umbrella policy or the underlying policies for whichthe umbrella policy provides excess coverage, that party is not entitledto be offered and cannot recover UM/UIM coverage by operation of law.
Id. (citing Mazza v. American Continental Ins. Co., Summit App. No. 21192, 2003-Ohio-360, ¶ 82-92; Uzhca v. Derham, Montgomery App. No. 19106, 2002-Ohio-1814).
 {¶ 39} Applying Holliman and Rall to the matter now before this court, the only possible conclusion is that Finn is not an insured under the Education policy issued by Nationwide, because she does not meet the definition of "who is an insured" under the policy. Accordingly, I would sustain the third assignment of error and reverse the decision of the trial court entirely.